# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
                                    )
PAVEMENT COATINGS                   )
TECHNOLOGY COUNCIL,                 )
                                    )
            Plaintiff,              )
                                    )
        v.                          )          No. 1:14-cv-1200 (KBJ)
                                    )
UNITED STATES GEOLOGICAL            )
SURVEY,                             )
                                    )
            Defendant.              )
                                    )
```

## <u>MEMORANDUM OPINION</u>

Plaintiff Pavement Coatings Technology Council ("PCTC") is a Virginia-based trade organization whose members are involved in the production, distribution, and sale of pavement surface coatings that contain refined tar sealant. (*See* Compl., ECF No. 1, ¶¶ 3, 6.) On April 15, 2011, PCTC submitted a detailed document request to the United States Geological Survey ("USGS"), a federal agency within the Department of the Interior, under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. (*See id.* ¶¶ 4, 5.) PCTC sought various records in the possession of the agency concerning its consideration, regulation, and review of coal tar or asphalt sealants. (*See id.* ¶ 5.) USGS engaged in extensive review and production of responsive records, but also withheld certain information, invoking established FOIA exemptions. (*See id.* ¶¶ 35, 43, 53, 66.) PCTC then filed the instant FOIA lawsuit to compel "the disclosure and release of agency records improperly withheld from PCTC by USGS." (*Id.* ¶ 1.)

Before this Court at present are cross-motions for summary judgment that the

parties have filed concerning PCTC's FOIA request and USGS's response. (*See* Def.'s

Mot. for Summ. J. ("Def.'s Mot."), ECF No. 20; Pl.'s Joint Cross-Mot. for Summ. J. and

Opp'n to Def.'s Mot. ("Pl.'s Mot."), ECF No. 22.) Notably, USGS has now produced,

either in full or in redacted form, all of the records it deems responsive to PCTC's

request—totaling over 52,000 pages. (*See* Decl. of Brian May ("May Decl."), Ex. 3 to

Def.'s Mot., ECF No. 20-3 ¶¶ 22–54, 63.) The crux of the remaining dispute is whether the

agency was justified in employing FOIA's Exemptions 5 and 6 to withhold or redact certain

documents that it located in its search. (*See* Pl.'s Mot. at 16–17.)[1] On November 13, 2019,

this Court issued an Order that **GRANTED** USGS's motion for summary judgment and

**DENIED** PCTC's motion for summary judgment. (*See* Order, ECF No. 35.) This

Memorandum Opinion explains the reasons for that Order.

## I.    BACKGROUND[2]

### A.    Factual Background

In its letter to USGS dated April 15, 2011, PCTC requested twelve categories of

information, including "[a]ll communications" (such as "notes, drafts, correspondence,

e-mails, galley prints, edits, raw data, [and] field notes" as well as "reports and

memoranda") and any other records in USGS's possession concerning research about,

and review of, coal tar sealants and their environmental impact written by the agency's

employees and contractors. (*See* FOIA Request Re Coal Tar Sealants ("FOIA

Request"), Ex. A to Compl., ECF No. 1-1, at 2–3.) For approximately nine months,

---

[1] Page numbers herein refer to those that the Court's electronic case-filing system automatically assigns. The withheld records comprise less than ten percent of the entire scope of responsive documents disclosed to PCTC. (*See* May Decl. ¶ 54)

[2] The facts recited herein are alleged in the complaint or in USGS's motion (*see* Def.'s Mot. at 2–10), and are undisputed unless otherwise noted.

from August 25, 2011, until May 25, 2012, USGS scientists (including Barbara Mahler, Peter Van Metre, and others) performed searches for responsive documents. (*See* Def.'s Mot. at 4.) They scanned relevant e-mail files, thousands of digital files in personal and shared network directories, and hard copy material. (*See id.* at 4–5.) After conducting these searches, the scientists provided Judy Cearley, the USGS Regional Information Coordinator, with potentially responsive materials, accompanied by an index that included, *inter alia*, the reviewers' opinions regarding whether various records should be released in full and what information should be redacted. (*See* May Decl. ¶ 63.) Cearley reviewed the records together with the index to determine what the agency would produce to PCTC in full and, where redactions were proposed, Cearley consulted with an internal attorney to coordinate a legal review of the material. (*See id.*)

The agency then began issuing interim responses releasing records to PCTC, beginning on October 11, 2011. (*See* Def.'s Mot. at 5.) USGS ultimately released 22 "batches" of material—in the form of CD-ROMs and DVDs with electronic files, as well as boxes of paper records. (*See id.* at 5–10.) Batches 1 through 16 were released in full to PCTC. (*See id.* at 5–7.) Instead, batches 17 through 22 consisted of a mix of information released in full and information released with redactions, and also included letters explaining that other responsive information had been withheld in full pursuant to FOIA's Exemptions 5 and 6 (*see id.* at 7–10).

According to USGS, the withheld or redacted responsive records consist of the following eight categories of material: (1) "Notes" from the scientists regarding their studies (May Decl. ¶ 66 (hereinafter "Category 1")); (2) "Exploratory Analysis" of data in order for scientists to assess various techniques (*id.* ¶ 68 ("Category 2")); (3) "Drafts[,]" including "working papers, draft manuscripts, draft journal articles, draft

proposals, draft abstracts, draft presentations, draft figures, draft reports, draft letters, draft press releases, draft documents of published or final papers, and draft documents that never resulted in a final document" (*id.* ¶ 69 ("Category 3")); (4) "Colleague Review[s][,]" which are internal agency peer reviews of draft materials that contain feedback, advice, and analysis of drafts (*id.* ¶ 70 ("Category 4")); (5) "Peer Review[s][,]" which are "external anonymous scientific peer reviews" of agency draft documents that contain feedback from peer reviewers at "selected scientific journal[s]" (*id.* ¶ 71 ("Category 5")); (6) "Editorial Review[s][,]" which consist of internal agency editorial reviews by USGS Bureau Approving Officials that contain pre-publication feedback, advice, and analysis concerning agency drafts (*id.* ¶ 72 ("Category 6")); (7) "Sample Sheets" that redact personally identifying information concerning the volunteers who authorized samples from their residences for use in an agency study (specifically the "name and address of each volunteer" along with "the internal Sample ID which was created by using the home address of the volunteer") (*id.* ¶ 76 ("Category 7")); and (8) "Non-Agency Record[s][,]" which are records that USGS did not produce or rely upon in any official capacity (*id.* ¶ 80 ("Category 8")).

## B. Procedural History

PCTC filed the instant civil action on July 16, 2014, seeking injunctive and other appropriate relief, including the release of documents withheld by USGS in response to PCTC's April 15, 2011, FOIA request. (*See* Compl. ¶¶ 1.) After PCTC filed this lawsuit, the agency revisited the records associated with Batches 17 through 22 to reassess its prior withholdings and redactions. (*See* May Decl. ¶ 45.) In reviewing the documents anew, the agency identified additional records and released them to PCTC.

(*See id.*)  USGS then made nine subsequent releases between January 30, 2015, and January 28, 2016.  (*See id.* ¶¶ 46–54.)

The parties filed cross-motions for summary judgment on February 2, 2016, and May 16, 2016, respectively.  USGS's motion argues that its supplemental declarations and *Vaughn* index, taken together, sufficiently demonstrate the adequacy of the agency's search for responsive records and justify the agency's withholdings pursuant to FOIA's Exemptions 5 and 6.  (*See* Def.'s Mot. at 18.)  Specifically, USGS argues that it has appropriately withheld under Exemption 5's deliberative process privilege several categories of records that the agency considered in its process of determining which material to report or publish.  (*See* Def.'s Mot. at 25–29 (referencing Categories 1 through 6).)  USGS further argues that the agency appropriately withheld under Exemption 6 the names, addresses, and Sample IDs of volunteers (contained in Category 7) who provided samples used in a study the agency conducted and ultimately published.  (*See id.* at 29–30.)  USGS also maintains that the declarations attached to its motion detail the line-by-line segregability analysis that the agency undertook for each document in order to make its productions to PCTC.  (*See* Def.'s Mot. at 18.)

PCTC's cross-motion begins with an extensive exposition of the inherent tension between the two parties.  In this regard, PCTC argues that "USGS has opposed, obstructed, and delayed PCTC and the scientific community from reviewing, testing, and raising questions about the data and models they purportedly relied upon to reach various conclusions—apparently (as demonstrated in the above quotations) to avoid 'external criticisms[.]'"  (*See* Pl.'s Mot. at 10.)  PCTC then asserts that USGS has improperly applied Exemptions 5 and 6 in withholding or redacting the responsive

records that the agency located in its search. (*See* Pl.'s Mot. at 17.) In particular, PCTC contends that USGS misapplied Exemption 5 to protect inter- or intra-agency pre-decisional and deliberative material because there was no culminating final decision of law or policy (*see* Pl.'s Mot. at 27); USGS characterizes as "deliberative" even material that is purely factual (*see id.* at 29–30); and USGS withheld communications that are not covered by Exemption 5 because they involve non-federal employees and outside consultants who did not act sufficiently like the agency's own personnel to characterize their communications as intra-agency (*see id.* at 38–39). Similarly, PCTC argues that USGS has misapplied Exemption 6 to protect names, addresses, and Sample IDs identifying volunteers who provided samples for a study given the compelling public interest in disclosure of information (*see id.* at 39), and it also specifically maintains that USGS has failed to demonstrate any substantial threat to privacy from disclosure (*see id.* at 40–41).

The parties' cross-motions for summary judgment have been fully briefed (*see* Def.'s Opp'n to Pl.'s Cross-Mot. for Summ. J. and Reply ("Def.'s Reply"), ECF No. 25; Pl.'s Reply, ECF No. 30), and are now ripe for this Court's consideration.

## II.    LEGAL STANDARDS

### A.    Summary Judgment in FOIA Cases

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Judicial Watch, Inc. v. Dep't of the Navy*, 25 F. Supp. 3d 131, 136 (D.D.C. 2014) (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). Rule 56 of the Federal Rules of Civil Procedure requires that a court grant a motion for summary judgment where the pleadings, disclosure materials on file,

and any affidavits "show[ ] that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Judicial Watch*, 25 F. Supp. 3d at 136 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)).  In the FOIA context, a district court conducts a *de novo* review of the record when evaluating a motion for summary judgment, and the responding federal agency bears the burden of proving that it has complied with its obligations under the FOIA.  *See* 5 U.S.C. § 552(a)(4)(B); *In Def. of Animals v. Nat'l Insts. of Health*, 543 F. Supp. 2d 83, 92–93 (D.D.C. 2008).  The court must analyze all underlying facts and inferences in the light most favorable to the FOIA requester, *see Willis v. Dep't of Justice*, 581 F. Supp. 2d 57, 65 (D.D.C. 2008), and it may grant summary judgment to an agency only after the agency establishes that it has "fully discharged its [FOIA] obligations[,]" *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996).

In order to prevail on summary judgment, an agency must demonstrate that it has conducted an adequate search for responsive records, withheld only information that is subject to withholding pursuant to a valid FOIA exemption, and released to the requestor all reasonably segregable non-exempt responsive records.  *See Walston v. United States Department of Defense*, 238 F. Supp. 3d 57, 62 (D.D.C. 2017) (crediting the agency's argument that summary judgment is warranted when the agency has "conducted an adequate search for records in response to [Plaintiff's] request; properly redacted its productions pursuant to the applicable FOIA exemptions; and complied with FOIA's segregability requirement").

## B.     Withholdings Under FOIA Exemptions 5 and 6

Although the responsive records that an agency locates in the course of its search must ordinarily be released to the requestor, the FOIA authorizes agencies to withhold certain documents and information pursuant to any of nine statutory exemptions. *See Milner v. Dep't of Navy*, 562 U.S. 562, 564 (2011). Where a plaintiff challenges an agency's withholdings, "the agency must 'demonstrate that the records have not been improperly withheld.'" *Evans v. Fed. Bureau of Prisons*, No. 16-cv-2274 (BAH), 2018 WL 707427, at *3 (D.D.C. Feb. 5, 2018) (quoting *Ctr. for the Study of Servs. v. U.S. Dep't of Health & Human Servs.*, 874 F.3d 287, 288 (D.C. Cir. 2017)). "The burden is on the agency to justify withholding the requested documents, and the FOIA directs district courts to determine de novo whether non-disclosure was permissible." *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 522 (D.C. Cir. 2015). Agency affidavits explaining the withholdings sufficiently warrant summary judgment only "when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)).

At issue in the instant case is the propriety of USGS's withholdings under Exemptions 5 and 6. Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party . . . in litigation with the agency[.]" 5 U.S.C. § 552(b)(5). This exemption covers documents protected under the "deliberative process privilege[,]" which "ensure[s] open communication between subordinates and superiors, prevent[s] premature disclosure of policies before final

8

adoption, and . . . avoid[s] public confusion if grounds for policies that were not part of the final adopted agency policy happened to be exposed to the public." *Conservation Force v. Jewell*, 66 F. Supp. 3d 46, 59 (D.D.C. 2014), *aff'd*, No. 15-5131, 2015 WL 9309920 (D.C. Cir. Dec. 4, 2015) (internal quotation omitted). Crucially, the deliberative process privilege protects only agency materials that are *both* pre-decisional *and* deliberative. *See Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015); *Hall & Assocs. LLC v. U.S. Envtl. Prot. Agency*, 315 F. Supp. 3d 519, 533 (D.D.C. 2018) (quoting *Abtew*).

For a record to qualify as pre-decisional, it must be created *before* the relevant agency policy or decision, and must have been "prepared in order to assist an agency decisionmaker in arriving at his decision." *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975)). Importantly, a record covered by this privilege need not be related to a specific policy decision; the record can still be properly withheld under Exemption 5 if it was "generated as part of a definable decision-making process." *McKinley v. Fed. Deposit Ins. Corp.*, 268 F. Supp. 3d 234, 243 (D.D.C. 2017); *see also Petroleum Info. Corp.,* 976 F.2d at 1434. However, records can lose their pre-decisional status if they are formally or informally adopted as the official agency position on an issue, or if they are used in agency dealings with the public. *See Hall & Assocs. LLC*, 315 F. Supp. 3d at 542 (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).

For a document to qualify as "deliberative," it must "reflect[] the give-and-take of the consultative process." *Id.* The concern animating this portion of the Exemption

is that disclosure would "expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Dudman Commc'ns Corp. v. Dep't of the Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987). The agency has the burden of articulating the deliberative process to which the withheld record is related, and also explaining the role that the document played in the course of the alleged deliberative process. *See Vaughn v. Rosen*, 523 F.2d 1136, 1145–46 (D.C. Cir. 1975). Under the "consultant" corollary, Exemption 5 extends to documents prepared by external consultants—as long as such documents were similarly created for, or aided in, the agency's deliberative process. *See 100Reporters LLC v. U.S. Dep't of Justice*, 248 F. Supp. 3d 115, 146 (D.D.C. 2017).

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]" 5 U.S.C. § 552(b)(6). When evaluating an agency's invocation of this exemption, a court first "must determine whether the [requested records] are personnel, medical, or 'similar' files[.]" *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1228 (D.C. Cir. 2008). If they are, the court must then engage in a two-step inquiry to determine whether disclosure "would constitute a clearly unwarranted invasion of personal privacy." *Id.* (quoting 5 U.S.C. § 552(b)(6)). First, the court asks "whether disclosure of the files 'would compromise a substantial, as opposed to *de minimis*, privacy interest,' because '[i]f no significant privacy interest is implicated . . . FOIA demands disclosure.'" *Id.* at 1229 (quoting *Nat'l Ass'n of Retired Fed. Empls. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)). Second, if a substantial privacy interest

exists, then "the court applies a balancing test that weighs the privacy interest in withholding the record against the public's interest in the record's disclosure." *Judicial Watch, Inc. v. Dep't of the Navy*, 25 F. Supp. 3d 131, 138 (D.D.C. 2014) (citing *Judicial Watch v. U.S. Dep't of State*, 875 F. Supp. 2d 37, 45 (D.D.C. 2012)).

## III.    ANALYSIS

USGS seeks summary judgment on the grounds that the agency has complied with all of its obligations under the FOIA.  (*See* Def.'s Mot. at 18.)  Instead, PCTC generally maintains that it is entitled to summary judgement because USGS has improperly invoked FOIA Exemptions 5 and 6 to withhold material that should have been disclosed.  (*See* Pl.'s Mot. at 16–17.)[3]

For the reasons explained below, this Court agrees with USGS that the challenged withholdings involve pre-decisional and deliberative records, and that the agency's disclosure of the names and addresses of the volunteers that participated in the agency's study would implicate a substantial privacy interest that outweighs any public interest in that information.  Therefore, this Court concludes that the agency has properly relied on FOIA Exemptions 5 and 6 to withhold or redact the records at issue.

### A.    The Withheld Documents Are Pre-decisional And Deliberative, And Therefore, USGS Properly Invoked Exemption 5

#### 1.    USGS's Withheld Documents Are Pre-decisional, Because They Were Generated During The Agency's Process Of Determining Whether Or Not To Publish Material

PCTC argues that the relevant agency decision for the purpose of proper application of the deliberative process privilege must be a "final decision of policy or

---

[3] PCTC does not expressly challenge USGS's search for records responsive to its FOIA request, nor does it dispute USGS's compliance with the FOIA's segregability requirement.

law[.]" (*See* Pl.'s Mot. at 27). However, it is well established that Exemption 5's deliberative process privilege applies not only to official agency policies but also to agency decisions more generally. *See Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 205 (D.D.C. 2007). Moreover, as relevant here, when a plaintiff requests records of documents "surrounding or leading up to an agency publication, the relevant agency decision" for the purpose of determining whether the material is pre-decisional under FOIA's Exemption 5 is *the decision whether to publish*. *Hooker v. U.S. Dep't of Health and Human Servs.*, 887 F. Supp. 2d 40, 57 (D.D.C. 2012) (citing *Formaldehyde Inst. v. Dep't of Health and Human Servs.*, 889 F.2d 1118, 1120 (D.C. Cir. 1989), *overruled on other grounds*, *Nat'l Inst. of Military Justice v. Dep't of Defense*, No. 06-5242, 2008 WL 1990366, at *1–2 (D.C. Cir. Apr. 30, 2008)); *see also United Am. Fin., Inc. v. Potter*, 531 F. Supp. 2d 29, 44 (D.D.C. 2008) (finding that relevant agency decision was agency's publication of an article where plaintiff's FOIA request sought all supporting documents and drafts of documents relating to that article).

Turning to the request at hand, PCTC has expressed its intention to "defend the use of [refined tar sealants]" by effectively replicating USGS's research and by "testing the falsifiability and reproducibility of [the USGS] studies." (Pl.'s Mot. at 13–15.) PCTC focuses specifically on "two scientists employed by USGS" for the "studies they conducted into the potential environmental impact of [refined tar sealants]," and argues that it has a "clear interest in . . . *how* they reached their conclusions[,]" including "the complete basis for the conclusions[.]" (*Id.* at 12–14.) Thus, it appears that PCTC has sought disclosure of the underlying methods that USGS utilized to study tar sealants, as

well as the agency's pre-publication findings regarding such sealants, *precisely because* PCTC is interested in discovering, and challenging, the agency's thought processes leading up to its sealant-related publications. And its records request—which seeks notes, exploratory analysis, working papers or draft reports, and internal and external reviews of such drafts (*see* Def.'s Mot. at 25–29)—thus squarely implicates material that falls within the protective reach of Exemption 5 insofar as it plainly pertains to "pre-decisional" scientific research developed in anticipation of publication.

For example, Category 1 ("Notes") reflects USGS scientists' thoughts regarding draft documents and preliminary analyses of scientific studies and results (*see* May Decl. ¶ 66), which are "predecisional, as they unquestionably precede" the agency's decision regarding whether or not to publish said "commentary . . . and preliminary conclusions drawn" by the scientists, *Abramyan v. United States Dep't of Homeland Security*, 6 F. Supp. 3d 57, 66–67 (D.D.C. 2013) (internal quotation marks and citation omitted). Category 2 ("Exploratory Analysis of Data") is also pre-decisional, because it reflects the "calibrat[ion] and select[ion] [of] the data [the scientists] used as part of the final document" and enabled "the scientists [to] determine[] the suitability of the data to publish in the final product." (Def.'s Mot. at 26.) Category 3, which includes working papers and draft documents (*see id.*), is presumptively pre-decisional, *see Exxon Corp. v. Dep't of Energy*, 585 F. Supp. 690, 698 (D.D.C. 1983); *see also Dudman Commc'ns Corp.*, 815 F.2d at 1569 (noting the consequences of disclosing draft documents), because these documents were the precise antecedent of an anticipated final publication and reflect the agency's iterative editorial decisions. And Categories 4 through 6—comprised of internal and external substantive and editorial reviews of material

considered for final publication (*see* Def.'s Mot. at 27–28)—are also pre-decisional, since they involve decisions regarding the content of subsequently published material and similarly relate directly to the ultimate decision of whether to or not publish. *See Hooker*, 887 F. Supp. 2d at 57.

This Court also notes that the withholding of these categories of material is consistent with the underlying purpose of Exemption 5's pre-decisional requirement. This exemption is intended to protect documents that "would inaccurately reflect or prematurely disclose the views of the agency, suggesting as [the] agency position that which is as yet only a personal position." *Coastal States Gas Corp.,* 617 F.2d at 866. If the USGS scientists' notes, drafts, exploratory analyses, and peer reviews are produced as PCTS requests, there is also a clear risk of unfair attribution of individual scientists' or reviewers' impressions to the agency itself. *Id.*

2.  USGS's Withheld Documents Are Deliberative Because They Consist Of Scientific Research, Evaluations, Drafts, And Communications Of Agency Scientists Or External Reviews Considered By The Agency

As explained above, even if a record is created prior to an agency decision, it is not "deliberative" unless the content of the record relates to the agency's decision-making process. Accordingly, the *nature* of a pre-decisional document is also a significant factor with respect to the determination of whether Exemption 5 has been properly invoked. *See Abtew*, 808 F.3d at 898–99. "[C]onsiderable deference" is given to the agency's judgment as to which records are part of the agency's deliberative process. *Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984). But that deference is not unlimited. Records withheld under Exemption

5 must legitimately reflect the "give-and-take of the consultative process" in order to warrant protection from disclosure. *Coastal States Gas Corp.*, 617 F.2d at 866.

This Court agrees with USGS that notes about scientific studies, draft materials, internal colleague reviews, external peer reviews, and internal editorial reviews (record categories 1, 3, 4, 5, and 6) are all deliberative by nature for the purpose of Exemption 5. *See id.* (explaining that Exemption 5 "covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency"). In fact, the D.C. Circuit has concluded that Exemption 5 covers comments that a journal generates in determining whether or not to publish an article that employees of a federal agency have submitted, where those comments also aided the agency's process of determining whether to publish the article and in what form. *See Formaldehyde Inst.*, 889 F.2d at 1120. Moreover, in contrast to what PCTC suggests, USGC's categories are not "overly broad[.]" (Pl.'s Mot. at 29.) Indeed, far from sweeping in any and all information relating to its exploratory and decision-making processes, the agency has itemized the specific categories of material it has withheld under Exemption 5 and has independently justified withholding each category of records. (*See* May Decl. ¶¶ 64–74.) This Court finds that each of the withheld categories is sufficiently deliberative to be appropriately exempted under Exemption 5.

The fact that the agency ultimately did not publish a report memorializing all of the underlying research PCTC seeks is of no moment. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 155–57 (1975) (explaining that decisions *not to* do something are also final decisions); *id.* at 151 n.18 (extending protection to records that are part of

decision-making process even where process does not produce actual decision by agency); *see also Judicial Watch, Inc. v. Clinton*, 880 F. Supp. 1, 13 (D.D.C. 1995) (holding that to release deliberative documents because no final decision was issued would be "exalting semantics over substance"), *aff'd on other grounds*, 76 F.3d 1232 (D.C. Cir. 1996); *Heartland All. for Human Needs & Human Rights v. U.S. Dep't of Homeland Sec.*, 291 F. Supp. 3d 69, 78–79 (D.D.C. 2018) ("A document may be predecisional even if a final decision is never reached.").  Regardless, the material plainly reflects the *deliberations* that the agency undertook as part of its decision-making *process*, which is all that the FOIA requires.  *See Hooker*, 887 F. Supp. 2d at 58 (explaining that drafts and internal reviews or commentary that is never published can be deliberative if it is part of an "ongoing, collaborative dialogue about the manuscript").

Scientists' exploratory analysis of data (Category 2 of the withheld material) is also properly deemed deliberative for the purposes of Exemption 5.  PCTC is mistaken to argue that, by disclosing its "raw data" but withholding its "exploratory analysis," USGS has improperly withheld "purely factual," rather than truly "deliberative," material.  (Pl.'s Mot. at 30.)  To the contrary, the "choice of what factual material . . . to include or remove during the drafting process is itself often part of the deliberative process," *ViroPharma Inc. v. Dep't of Health & Human Servs.*, 839 F. Supp. 2d 184, 193 (D.D.C. 2012), such that "disclosure of even purely factual material may so expose the deliberative process within an agency that it must be deemed exempted[,]" *Mead Data Cent. Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 256 (D.C. Cir. 1977).  In other words, it is "well-established law in this Circuit that the deliberative process

privilege operates to shield from disclosure agency decision-making reflecting the collection, culling and assessment of . . . scientific data." *Ctr. for Biological Diversity v. U.S. Envtl. Prot. Agency*, 369 F. Supp. 3d 1, 20 (D.D.C. 2019) (collecting cases); *see also Goodrich Corp. v. U.S. Envtl. Prot. Agency*, 593 F. Supp. 2d 184, 189 (D.D.C. 2009) ("[E]ven if the data plugged into the model is itself purely factual, the selection and calibration of data is part of the deliberative process to which Exemption 5 applies."). Thus, to the extent that the scientists' exploratory analysis entailed modelling runs and produced resulting data (*see* May Decl. ¶ 68), such analyses reflect the scientists' methods and calibration of data, and withholding under Exemption 5 is therefore authorized.

Nor does the fact that certain documents were prepared by external consultants make any difference with respect to the agency's invocation of Exemption 5. The "consultant corollary" extends the same Exemption 5 protection to documents that external consultants "create[] for the purpose of aiding the *agency's* deliberative process." *Dow Jones & Co., Inc. v. Dep't of Justice*, 917 F.2d 571, 575 (D.C. Cir. 1990) (emphasis in original). In this case, the withheld documents include "[d]ocuments jointly written and/or transmitted to and from [various] non-federal entities[,]" each of which "USGS collaborated with to publish [the agency's] results or corresponded with" in the course of the agency's research. (May Decl. ¶ 74.) The Court is satisfied with this explanation, and rejects PCTC's contention that USGS has failed to demonstrate "how the non-USGS individuals acted enough like USGS's own personnel to justify characterizing their communications as 'inter-agency.'" (Pl.'s Mot. at 39 (citation omitted).) The alleged joint writing and collaboration in the agency's

publication process is enough to demonstrate that the documents were "created for the purpose of aiding the agency's deliberative process" in a manner that warrants the application of the consultant corollary. *Judicial Watch, Inc. v. U.S. Dep't of State*, 306 F. Supp. 3d 97, 107 (D.D.C. 2018) (quoting *Pub. Citizen v. Dep't of Justice*, 111 F.3d 168, 170 (D.C. Cir. 1997)).

The Court also notes that, ultimately, protecting all of the disputed material is consistent with the underlying purpose of Exemption 5's authorized withholding of "deliberative" materials. The privilege is intended to encourage candid deliberations in order to improve the quality of ultimate decisions, prevent public confusion, and protect the integrity of the decision-making process, by ensuring that agency action is evaluated based on what officials *decide*, not what they *consider*. *See Jordan v. U.S. Dep't of Justice,* 591 F.2d 753, 772–73 (D.C. Cir. 1978). Against this backdrop, PCTC's contention that disclosure itself enables both the "free exchange of ideas" and an attempt to "reproduce or verify the work" of the agency is misguided. (Pl.'s Mot. at 31). FOIA's Exemption 5 rests on the opposite assumption—i.e., that disclosure of deliberative information would discourage candid discussions within the agency and would cause scientists to censor their internal discussions, deliberations, and analyses to conform to outside criticism regarding how to conduct or present research on refined tar sealants. Equally importantly, disclosure of deliberative information regarding studies that are not ultimately published—as in the circumstances presented here— could be misused by outside parties and cause public confusion. Such results are manifestly inconsistent with the purpose of Exemption 5.

**B.    USGS Properly Invoked Exemption 6 To Withhold Names, Addresses, And Sample IDs Of Volunteers Participating In The Agency's Study**

USGS also invoked FOIA Exemption 6 to support its redactions of other records at issue, namely those that contain sensitive, personally identifiable information of individual volunteers who participated in a study that the agency conducted.  Exemption 6 generally exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[,]" 5 U.S.C. § 552(b)(6), and courts have concluded that this exemption shields such information in the absence of a superseding public interest in disclosure, *see, e.g.*, *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 775 (1989); *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1230 (D.C. Cir. 2008); *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 33 (D.C. Cir. 2002). Accordingly, when evaluating a withholding under Exemption 6, the Court must determine (1) whether the parties are fighting over personnel files, medical files, or similar files, (2) whether the material at issue indeed implicates a privacy interest that is more than *de minimis*, and (3) whether the privacy interest outweighs any public interest in disclosure.  *See Norton*, 309 F.3d at 33.  For the following reasons, this Court concludes that USGS has made the requisite showing that the information was properly withheld under Exemption 6.

**1.    Exemption 6's "Similar Files" Include Names And Addresses**

When evaluating USGS's withholdings under Exemption 6, the threshold question is whether the names and/or addresses of volunteers who participated in a survey by providing soil samples from their residences is the type of information protected under this exemption.  *See* 5 U.S.C. § 552(b)(6) (establishing that Exemption

6 protects "personnel" or "medical" files, or "similar files").[4]  It is important to note at the outset that information contained in "similar files" for Exemption 6 purposes need not pertain to individuals who are themselves employed by the agency; "similar files" has been interpreted broadly to include "[g]overnment records on an individual which can be identified as applying to that individual."  *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982) (quoting H.R. Rep. No. 89-1497, at 2428 (1966)).  Moreover, here, PCTC appears to concede that, at least theoretically, the names and addresses of the volunteers fit into Exemption 6's "similar files" category.  (*See* Pl.'s Mot. at 40); *see also Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 152–53 (D.C. Cir. 2006) (explaining that the  "similar files" protection covers not just the files themselves, "but also bits of personal information, such as names and addresses").

PCTC's objection to the agency's withholding of such information derives from its speculation that the withheld information actually relates to "businesses or corporations" rather than "individuals," which, according to PCTC, means that Exemption 6 does not apply.  (Pl.'s Mot. at 41–42.)  However, this objection is both unsupported and irrelevant.  For one thing, by asserting that the information at issue consists of "the home address of the volunteer[,]" the agency leaves little room for doubt that the information withheld *pertains to individuals*.  (Def.'s Mot. at 30.) Furthermore, even if some of the volunteers who participated in the survey were organizations or business entities, that speculation alone does not make Exemption 6 inapplicable.  This is because an individual person's privacy interests might be

---

[4] The agency explains that the internal Sample ID associated with each sample collected for its study is "created by using the home address of the volunteer[.]"  (Def.'s Mot. at 30.) Thus, there is no dispute that disclosure of the Sample IDs would be akin to disclosure of the volunteers' addresses.

implicated even if the name or address at issue pertains to an organization or other non-individual entity. *See, e.g.*, *Judicial Watch*, 449 F.3d at 153 (holding that, when invoking Exemption 6, the FDA had "fairly asserted abortion-related violence as a privacy interest for both the names and addresses of persons and businesses associated with [a certain drug].") And to the extent that identifying information such as an organization's address can implicate the privacy of individuals, releasing such sensitive information about the organization is functionally the same as releasing similar information about the organization's individual members. *See Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 76 (D.D.C. 2007) (holding that, in the unusual case where "organizations whose identities have been withheld are very small[,]" disclosing information about the organizations is tantamount to disclosing information about individuals).

Consequently, PCTC's speculation that the agency *might* have withheld names and addresses of organizations or business entities rather than individuals (despite the agency's clear statement to the contrary) is not enough to preclude the application of Exemption 6.

          2.     <u>Disclosure Of Names And Addresses Implicates A Substantial Privacy Interest</u>

Having determined that the names and addresses of volunteers who provided samples to the agency during its research study qualify as "similar files" within the scope of Exemption 6, the Court turns to the second step of the exemption inquiry: whether such personal information implicates "a substantial, as opposed to a *de minimis*, privacy interest." *Norton*, 309 F.3d at 33 (quoting *Horner*, 879 F.2d at 874). Individuals certainly have a privacy interest in avoiding "unlimited disclosure" of their

names and addresses, but "the disclosure of names and addresses is not inherently and always a significant threat to the privacy of those listed." *Horner,* 879 F.2d at 875–77. Instead, "whether it is a significant or a *de minimis* threat depends upon the characteristic(s) revealed by virtue of being on the particular list, and the consequences likely to ensue." *Id.* at 877.

It appears that revelation of the names and addresses of the volunteers who participated in the agency's study would not necessarily reveal information that is "stigmatizing, embarrassing[,] or dangerous[.]" *Wash. Post Co. v. U.S. Dep't of Agric.*, 943 F. Supp. 31, 34 n.3 (D.D.C. 1996). However, the record indicates that disclosure would still have significant consequences. Here, PCTC admits that it intends to use the identifying information to "collect[] comparable samples to test, [and] replicate and validate USGS's findings[,]" and that it will inform the USGS volunteers that "USGS's sampling results are flawed[.]" (Pl.'s Mot. at 41.) Such intended use of the name and address information is strikingly reminiscent of the kinds of solicitations that the D.C. Circuit has expressed concerns about when evaluating the applicability of Exemption 6. *See Lepelletier v. F.D.I.C.*, 164 F.3d 37, 47 (D.C. Cir. 1999) (noting that the D.C. Circuit "has been particularly concerned when the information may be used for solicitation purposes").

The prospect of such solicitation is also especially troublesome where, as here, the volunteers who participated in the survey were initially "told that the[ir] personally identifiable information ('PII') would remain confidential when they agreed to participate in the study." (May Decl. ¶ 76.) PCTC concedes that such an "expect[ation] or prefer[ence] [of] privacy" establishes a substantial privacy interest, given that the

volunteers whose names are released will be solicited.  (Pl.'s Mot. at 40.)  And, in this

Court's view, the volunteers' reasonable (and promised) expectation of confidentiality

and privacy alone is enough to implicate Exemption 6; the fact that "the study

volunteers [would] have the right and ability to refuse to participate in any subsequent

PCTC sponsored follow-up study" is irrelevant.  (Pl.'s Reply at 26.)  *Cf. AquaAlliance*

*v. U.S. Bureau of Reclamation*, 139 F. Supp. 3d 203, 212–13 (D.D.C. 2015) (holding

that names and addresses of water transfer participants were not exempt, in part because

there was no "suggestion" that disclosure would lead to an unwanted barrage of

personal solicitations).

      3.     PCTC Has Not Demonstrated A Plausible Public Interest In
             Disclosure Of The Volunteers' Names and Addresses

      The final step in the Exemption 6 inquiry is for the Court to determine whether

the substantial privacy interest in the disputed material *outweighs* any public interest in

disclosure.  *See Multi Ag Media LLC*, 515 F.3d at 1230 (citations omitted).  In this

regard, it is important to note that "the only relevant 'public interest in disclosure' to be

weighed in this balance is the extent to which disclosure would serve the 'core purpose

of the FOIA,' which is 'contribut[ing] significantly to public understanding of

the operations or activities of the government.'"  *U.S. Dep't of Defense v. Fed. Labor*

*Relations Auth.*, 510 U.S. 487, 495 (1994) (second alteration in original) (emphasis

omitted) (quoting *Reporters Comm.*, 489 U.S. at 775 ).  In other words, disclosure must

serve "the citizens' right to be informed about what their government is up to."  *Beck v.*

*Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993) (internal quotation marks and

citation omitted).  Therefore, "[i]nformation that 'reveals little or nothing about an

agency's own conduct' does not further the statutory purpose; thus the public has no

cognizable interest in the release of such information." *Id.* at 1493 (quoting *Reporters Comm.*, 489 U.S. at 773).

It is clear to this Court that PCTC has failed to identify a cognizable *public* interest in access to the names and addresses of the volunteer survey participants. In this regard, PCTC contends that "PCTC and the broader scientific community" intend to use this information to "collect[] comparable samples to test, [and] replicate and validate USGS's findings" (Pl.'s Mot. at 41), and that "[i]f USGS's samples are flawed, the public has an interest in knowing about these flaws," (*id.*). But the purpose of the FOIA is not to allow the public to replicate the agency's deliberations by collecting its own data from the sources that an agency relies upon. Instead, the far more modest goal of the FOIA statute is to shed light on an agency's decisionmaking; nowhere does Congress indicate that members of the public must have access to all of the inputs that the agency had in order to design and undertake their own evaluation and/or test the agency's conclusions. And, indeed, the fact that Congress's intent is merely to reveal the bases for an agency's expert judgment, not to empower interested stakeholders to replicate an agency's deliberations and potentially undermine its judgments, is underscored by the precedents in the area of administrative law that firmly maintain that even courts cannot second-guess an agency's expertise, so long as it has reached reasonable and non-arbitrary conclusions. *See, e.g.*, *Nat'l Mar. Safety Ass'n v. Occupational Safety & Health Admin.*, 649 F.3d 743, 751–52 (D.C. Cir. 2011) ("[O]ur task is not to second-guess an agency decision that falls within a zone of reasonableness but rather to ensure public accountability by requiring the agency to identify the evidence upon which it relies[.]" (internal quotation marks and citation omitted)).

In any event, as USGS explains, "replicating a study" does not mean *exactly reproducing* the study and, even if it did, "this would be impossible, as some of the [v]olunteers have moved and the conditions would not be identical to those when the samples were collected in 2009." (Suppl. Decl. of Peter Van Metre, Ex. 1 to Def.'s Reply, ECF No. 25-1 ¶ 23.) Therefore, this Court is unpersuaded that there is a legitimate FOIA-related public interest in replicating or reproducing scientific datasets collected by an agency, much less one that can be furthered by releasing the names and addresses of the volunteer study participants. PCTC does not need to replicate or reproduce USGS's study to know what USGS was up to: the final study has been published, and "the pertinent scientific data" collected from the volunteers "is already released[,]" (May Decl. ¶ 76); therefore, PCTC already has what the FOIA guarantees, i.e., the information that supports the conclusions that USGS reached.

Consequently, the Court concludes that the privacy-versus-public-interest balance here tilts decisively in favor of non-disclosure. The Court is aware that, as a general matter, the text of Exemption 6, which prohibits disclosure only if the invasion of privacy that would result from disclosure is "clearly unwarranted[,]" 5 U.S.C. § 552(b)(6), "instructs the court to tilt the balance in favor of disclosure," *Getman v. NLRB*, 450 F.2d 670, 674 (D.C. Cir. 1971); *see also Norton*, 309 F.3d at 32 ("[U]nder Exemption 6, the presumption in favor of disclosure is as strong as can be found anywhere in the [FOIA]" (quoting *Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*, 690 F.2d 252, 261 (D.C. Cir. 1982)). But, in this case, the volunteers' privacy interest is substantial, given the volunteers' established expectations of confidentiality and the undisputed prospect of unwanted solicitation. And any cognizable public

interest in the disclosure of the volunteers' names and addresses is especially weak, because the names and addresses shed no additional light on the agency's operations. Therefore, the Court finds that USGS appropriately applied Exemption 6 to withhold that information.

## IV.    CONCLUSION

USGS has established that it properly invoked FOIA Exemptions 5 and 6 to justify its withholdings and redactions and, thereby, it has established that it has sufficiently discharged its obligations under the FOIA.  Therefore, the agency is entitled to summary judgment.  As set forth in the Order dated November 13, 2019, USGS's motion for summary judgment must be **GRANTED** and PCTC's motion for summary judgment must be **DENIED**.

DATE:  December 19, 2019

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge